IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICKY RAY KEEL,

    Plaintiff,                             No. 2:10-cv-2796 JAM DAD (PC)

    vs.

D. BAKER, et al.,                          ORDER AND

    Defendants.                      FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the Eighth Amendment by acting with deliberate to his safety. This matter is before the court on defendants' motion for summary judgment.

                SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

1

on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On November 12, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

/////

/////

ANALYSIS

I. Facts[1]

At all times relevant to this action, plaintiff was an inmate at Mule Creek State Prison (Mule Creek). (Declaration of Ricky Ray Keel, filed July 12, 2011 (Keel Decl.) at ¶ 2.) Defendants Baker, Childress, and Palomares were all employed as correctional officers at Mule Creek. (Declaration of Baker in Support of Motion for Summary Judgment, filed June 16, 2011 (Baker Decl.) at ¶ 1; Declaration of Childress in Support of Motion for Summary Judgment, filed June 16, 2011 (Childress Decl.) at ¶ 1; Declaration of Palomares in Support of Motion for Summary Judgment, filed June 16, 2011 (Palomares Decl.) at ¶ 1.) Defendant Green was employed as a correctional sergeant at Mule Creek. (Declaration of Green in Support of Motion for Summary Judgment, filed June 16, 2011 (Green Decl.) at ¶ 1.) At all times relevant to this action, all four defendants worked in Mule Creek's Investigative Services Unit (ISU). (Baker Decl. at ¶ 2; Childress Decl. at ¶ 2; Palomares Decl. at ¶ 2; Green Decl. at ¶ 2.) Defendant Green supervised the other three defendants. (Green Decl. at ¶ 2.) The ISU staff are responsible for investigating information concerning possible attacks on inmates. (See Green Decl. at ¶¶ 3-4.)

On August 13, 2009, as defendant correctional officer Palomares was leaving an Institutional Classification Meeting that he had attended, an inmate named Fred Crippen called to defendant Palomares from inmate Crippen's cell in an administrative segregation unit. (Palomares Decl. at ¶ 4.) Defendant Palomares approached inmate Crippen's cell, and inmate Crippen handed him a note. (Id. at ¶ 5.) The note stated that inmate Crippen wanted an interview with ISU staff. (Id.) On August 18, 2009, an officer gave defendant Palomares a copy of a letter and an envelope, obtained during a routing screening of outgoing mail, which appeared to be from inmate Crippen to a couple in Tracy, California. (Id. at ¶ 6 and Ex. 1.) The letter, dated August 15, 2009, read in relevant part:

---

[1] Except as specifically noted, these facts are undisputed by the parties.

4

> Dear Mary Lou & John,
>
> As you may know I became fed up with the games and the way people were treating not just Ricky but as well myself.
>
> They constantly take our kindness for weakness so I took the window of oppertunity [sic] to leave and put myself in AdSeg "the Hole".
>
> They will be transfering [sic] me somewhere yet I don't know. But the real reason I am writting [sic] to you, is because yesterday I went ot the yard and I was told by a person who is highly upset at Rray, and this guy Cash sent Bullett out to the yard were [sic] RR is to round up a couple of their white partner's and to hurt Ricky. I don't want to see this happen to Ricky and I didn't want Ricky to get involed [sic] in any trouble, that's why I left alone so he could stay here and enjoy being so close to you & his family. So please read this to him if he calls or send it to him so he will know to watch his back, now I am sad I can't be there to help him so I'm doing it this way.
>
> . . . .
>
> P.S.  Please do this quickly time is short.

(Palomares Decl. ,Ex. 1.) Defendant Palomares learned that inmate Crippen had been housed in Facilities A and C before he was placed in administrative segregation. (Palomares Decl. at ¶ 10.) Defendant correctional officer Palomares inquired of custody staff in facility C about the nicknames in the letter, but no one he asked "knew of any inmates who went by the monikers Cash, Bullett, RRay, RR, or Ricky." Id. at ¶ 11. He also asked a sergeant in Facility A about inmates with those nicknames, but the sergeant he inquired with "was unable to identify anyone." (Id. at ¶ 12.)

On August 19, inmate Crippen was brought to the ISU office for an interview. (Id. at ¶ 12.) Defendants Baker, Childress, Palomares, and Green were present at the interview. (Id. at ¶ 13; Green Decl. at ¶ 10.) The interview lasted approximately nineteen minutes. (Palomares Decl. at ¶ 15.) After the interview with Crippen, defendant correctional officers Baker and Palomares did not believe plaintiff Ricky Ray Keel needed to be removed from the general population and placed in administrative segregation. (Baker Decl. at ¶ 9; Palomares

Decl. at ¶ 26.) Within a day after the interview of inmate Crippen, defendant Baker inquired of a correctional officer in Facility A whether he "knew the identity of inmates with the nicknames 'Cash' and 'Bullet,' and whether he had heard anything concerning a threat to" plaintiff, but the officer had no information. (Baker Decl. at ¶ 10.)

On the morning of August 24, 2009, five days after the interview of inmate Crippen, plaintiff was assaulted on the Facility A yard by another inmate. (Childress Decl. at ¶ 8.) Plaintiff was stabbed in the right side of his head and he suffered multiples abrasions "and obvious traumatic injury to his truck and extremities." (Pl.'s Ex. C, at 2.) Plaintiff was taken to the San Juan Mercy Trauma Center and admitted to the Traumatic Intensive Care Unit, where he was found to have "multiple rib fractures and facial fracture" and "nonoperative facial fractures." (Id. at 4; Keel Decl. at ¶ 3.)

The parties dispute whether defendant correctional sergeant Green participated in the interview of inmate Crippen, or whether Green was merely present in the office while that interview was taking place. Defendant Green avers that he did not participate in the interview. (Green Decl. at ¶ 10.) Plaintiff has submitted a declaration from inmate Crippen, who therein describes the interview as one "between" himself and all four defendants in this action, including defendant Green. (Declaration of Fred Crippen, filed July 12, 2011 (Crippen Decl.) at ¶ 3.)

The parties also dispute whether inmate Crippen gave the defendant correctional officers enough information to lead them to the individual who was organizing the assault on plaintiff and to warrant placing plaintiff in administrative segregation following their interview of Crippen. Defendants present evidence that for thirteen minutes of the nineteen minute interview, inmate Crippen talked about matters unrelated to plaintiff's safety, that Crippen never provided them any facts indicating that plaintiff was in danger, and that the only requests inmate Crippen made "was for return of a TV set he left on the yard and transfer to another prison." (Baker Decl. at ¶¶ 5- 8; Palomares Decl. at ¶¶ 15-25.)

/////

Plaintiff has presented evidence that during his interview with defendants inmate Crippen "made it clear" to them "as to the threat" to plaintiff, that "Cash and Bullet were initiating the threat," that "Cash could be identified to his correct name based on his administrative segregation placement" and that "Bullet" was Cash's cell partner when Cash was placed in administrative segregation, and that plaintiff "needed to watch his back in regards to the upcoming/potential assault." (Crippen Decl. at ¶ 3.)  Inmate Crippen also avers that defendant Baker "replied in the affirmative" when given the information about how to identify "Cash."  (Id. at ¶ 4.)[2]  Finally, Crippen avers that neither Cash nor Bullet ever told him who they were going to recruit to assault plaintiff.  (Id. at ¶ 6.)  Plaintiff has also presented his own declaration in which he states that, had he been interviewed and informed of the threat, he could have told the defendant correctional officers who "Cash and Bullet were by last name, and that both individuals had been housed with" him on Facility A at Mule Creek.  (Keel Decl. at ¶ 9.)

II. Defendants' Motion

Defendants seek summary judgment in their favor on the ground that they were not deliberately indifferent to plaintiff's safety.  Defendants also contend, in the alternative, that they are entitled to qualified immunity.  In addition, defendant Green seeks summary judgment on the ground that the only basis for plaintiff's claim against him is his role as the supervisor of defendants Baker, Childress, and Palomares.

The Eighth Amendment's proscription against cruel and unusual punishment includes a requirement that prison officials "take reasonable measures to guarantee the safety of . . . inmates."  Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  An Eighth Amendment claim based on deliberate indifference to safety has two elements.  First, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm."  Farmer v.

---

[2] In addition to inmate Crippen's declaration, plaintiff directs the court's attention to the "Relevant Excerpts of Transcription of Recorded Interview of Inmate Crippen on August 19, 2009," attached as Exhibit 2 to the Palomares Declaration.

7

Brennan, 511 U.S. 825, 834 (1994).  Second, the inmate must show that defendants acted with "deliberate indifference" to that risk.  Id.  Deliberate indifference is shown by proof that a prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he drew the inference.  Id. at 837.  The deliberate indifference standard "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault."  Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Nor is an inmate claiming deliberate indifference to safety required to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id.

        The undisputed evidence shows that on two separate occasions defendant correctional officer Palomares received notice that inmate Crippen had information and concerns about a possible planned assault on plaintiff by other inmates.  Five days before the assault, inmate Crippen was interviewed by defendant correctional officers Childress, Baker, and Palomares, with defendant correctional sergeant Green present.  Defendants contend that the information they received from inmate Crippen, combined with what they learned when they conducted investigation into the information received from inmate Crippen, was insufficient to give them knowledge that plaintiff faced a substantial risk of harm.[3]

        However, plaintiff disputes this and has come forward with sufficient evidence to give rise to an inference that the information provided by inmate Crippen was in fact sufficient to make defendants aware of a substantial risk of harm to plaintiff.  In particular, inmate Crippen

---

[3] Defendants contend that the "uncorroborated information" they received from inmate Crippen did not warrant transferring plaintiff to administrative segregation.  (Mem. of P. & A. in Supp. of Mot. for Summ. J., filed June 16, 2011 (Doc. No. 29) at 8.)  Defendants also present evidence that "over the past several years" space in administrative segregation at Mule Creek has been "limited," with "nearly 4,300 prisoners" housed at Mule Creek but only space for "a few hundred inmates" in administrative segregation.  (Green Decl. at ¶ 9.)  This evidence presented by defendants, however, gives rise to a plausible inference that their resources to protect plaintiff may have been unduly limited.

has averred that he made the threat to plaintiff "clear" to defendants, and told them the two inmates who were initiating the threat and how to identify those inmates. (Crippen Decl. (Doc. No. 30) at 25.) Moreover, that portion of the transcript of inmate Crippen's interview with correctional officers attached to the declaration of defendant Palomares suggests that inmate Crippen gave defendants several pieces of information that they might have used to identify inmates Cash and Bullet, including that Cash was "back in the hole now," had been a MAC representative in building three, that Cash and Bullet had been celled together, and that Bullet was taken to medical staff for "iron deficiency shots all the time."[4] (Palomares Decl., Ex. 2.) The conflicting inferences to be drawn from the evidence before the court prevent a finding at summary judgment that the defendants were unaware of a substantial risk of harm to plaintiff. Put another way, if a jury were to believe plaintiff's evidence they could reasonably find that the defendants were aware of that risk.

        Defense counsel also argues that the evidence before the court does not reflect that the defendants disregarded a substantial threat to plaintiff's safety. Rather, they conducted some degree of investigation and concluded, albeit erroneously in hindsight, that plaintiff faced no substantial threat of harm requiring further action. Defense counsel contends that while one might second-guess the defendants failure to do more than they did, the evidence reflects at most negligence on their part and not deliberate indifference. It is true that a reasonable trier of fact could conclude that the defendants were merely negligent - if the trier of fact also find the defendants' evidence more believable. However, if plaintiff's evidence as submitted on summary judgment is believed, a jury could also reasonably conclude that defendants had very specific information regarding the substantial threat of harm that plaintiff faced and took little, if

/////

---

[4] Specifically, this part of the interview transcript reflects that inmate Crippen informed the defendant officers that "[y]ou take him out for iron deficiency shots or whatever all the time," implying that Bullet would have been known to defendants as a result of being escorted to medical appointments for these shots.

any, meaningful action thereby reflecting their deliberate indifference to his safety. In such a case, summary judgment is precluded.

Defendant correctional sergeant Green also seeks summary judgment on the ground that there is no evidence that he participated in any deprivation of plaintiff's Eighth Amendment rights. Although defendant Green concedes that he was present at the time of the Crippen interview, he contends that he did not participate in it and that his only involvement in the events complained of was as the supervisor of defendants Baker, Childress, and Palomares. Liability may be imposed on a supervisor under 42 U.S.C. § 1983 only if: (1) the supervisor personally participated in the deprivation of constitutional rights; or (2) the supervisor knew of the violations and failed to act to prevent them; or (3) the supervisor implemented a policy "'so deficient that the policy itself "is a repudiation of constitutional rights" and is "the moving force of the constitutional violation."'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). See also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The evidence presented in connection with the pending summary judgment motion gives rise to an inference that defendant Green knew of the threat to plaintiff's safety and failed to act. Therefore, defendant Green is not entitled to summary judgment in his favor.

Finally, defendants contend that they are entitled to summary judgment on the ground of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-prong analysis: courts look to whether the facts "show the officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the alleged unlawful action. See Saucier v. Katz, 533

/////

/////

U.S. 194, 201 (2001), *overruled in part by* Pearson, 555 U.S. at 236-43.[5]  "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' Saucier, 533 U.S. at 202, 121 S.Ct. 2151.  The key inquiry is whether a reasonable person could have believed his actions lawful at the time they were undertaken.  Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)."  Bull v. City and County of San Francisco, 595 F.3d 964, 1002 (9th Cir. 2010).  In resolving the question of qualified immunity, the court views the facts in the light most favorable to the plaintiff.  See Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000).

        The conflicting inferences from the evidence that preclude summary judgment on the merits of plaintiff's Eighth Amendment claim also preclude a finding that defendants are entitled to summary judgment on the grounds of qualified immunity.  If the conflicting inferences from the evidence are resolved in plaintiff's favor, no reasonable correctional officer could have believed that it was lawful not to take steps to protect plaintiff from the risk of harm described by inmate Crippen.  Defendants are therefore not entitled to summary judgment in their favor on qualified immunity grounds.

III.  Other Matters

        On August 24, 2011, plaintiff filed with the court a pretrial statement and a motion for the attendance of inmate Crippen at trial.  No date has been set for filing pretrial statements or for pretrial conference or jury trial in this matter.  Plaintiff's motion is premature and will therefore be denied without prejudice to its renewal at a later stage of these proceedings should these findings and recommendations be adopted by the district court.

/////

---

[5] In Pearson, the United States Supreme Court held that courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. 223, 236 (2009).

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's August 24, 2011 motion (Doc. No. 33) is denied without prejudice; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' June 16, 2011 motion for summary judgment (Doc. No. 29) be denied; and

2. This matter be referred back to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
keel2796.msj